32h   93
62ad355

THE PEOPLE OF THE STATE OF NEW YORK EX REL. THOMAS McMANUS, APPELLANT, *v.* HUBERT O. THOMPSON, COMMISSIONER OF PUBLIC WORKS, AND JOSEPH BLUMENTHAL, SUPERINTENDENT OF INCUMBRANCES, RESPONDENTS.

*Obstruction in a sidewalk by the erection of an electric-light pole — when the city authorities will not be compelled by* mandamus *to remove it.*

The relator applied for a writ of *mandamus* compelling the defendants to cause to be removed a telegraph pole erected by the United States Illuminating Company in front of his premises in Third Avenue. The pole was erected in accordance with the directions of the defendant, the Commissioner of Public Works of the city of New York, who was acting pursuant to an ordinance of the common council of the city granting to the company the right to erect poles as it was authorized to do by chapter 512 of 1879.

*Held,* that even if the law and ordinance authorizing the erection of the pole were void, because no provision was made for compensating the relator for the taking of his private property, yet the relator was not entitled to a *mandamus* to compel the removal of the pole; that his remedy, if any, was by an action.

APPEAL from an order made at a Special Term denying the relator's motion for a peremptory writ of *mandamus*.

*Thos. E. C. Ecclesine* and *John C. Tomlinson,* for the relator.

*Thomas H. Hubbard,* for the respondents.

DAVIS, P. J.:

This was an application on the part of the relator for a peremptory *mandamus* to compel the respondents, as public officers of the city of New York, to remove the telegraph pole erected by the United

States Illuminating Company, partly in front of his premises No. 1303 Third avenue. The United States Illuminating Company are a corporation organized under an act of the legislature passed February 16, 1848 (chap. 37), entitled "An act to authorize the formation of gas-light companies," and the several acts amendatory thereof.

By chapter 512 of the Laws of 1879, it is provided that any such company shall have " full power to carry on the business of lighting by electricity cities, towns and villages within this State, and the streets, avenues, public parks and places thereof, and public and private dwellings therein, and for the purposes of such business * * * shall also have power to lay, erect and construct suitable wires or other conductors, with the necessary poles, pipes and other fixtures, in, on, over and under the streets, avenues, public parks and places of such cities * * * for conducting and distributing electricity, with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe."

On the 3d of May, 1881, the board of aldermen of the city of New York passed an ordinance which it is claimed authorized the United States Illuminating Company, among other things, to erect poles for the purpose of conveying, using and supplying electricity or electrical currents for purposes of illumination, under and according to the directions of the commissioner of public works. This ordinance does not in so many words authorize the erection of poles, but it is claimed that authority to erect lamp-posts in the streets, avenues and public places in the city is to be construed to include the erection of poles for the purpose of carrying the wires of the company through the streets of the city. That it was so understood by the board of aldermen seems to be shown by a subsequent ordinance passed on the 19th of December, 1882, wherein they direct the commissioner of public works "to notify the United States Illuminating Company that the poles erected by it in the various streets and avenues of the city must in all cases be painted in accordance with established regulations; and also, that all poles to be hereafter erected in this city, by said company, shall be painted before being placed in position, in order that they may not present an unsightly appearance."

Under the first of these ordinances the department of public works on the 29th of March, 1882, gave permission to the United

States Illuminating Company to erect poles and place wires thereon in Third avenue from the Bowery to Harlem river, particularly specifying the size and kind of poles to be used, and the places and manner of erecting the same. The department of public works appointed an officer to take charge of the erection of such poles, and it appears by the evidence in the case that the pole in question was erected under the superintendence of that officer in pursuance of authority from the department of public works, acting under the ordinances of the city first above referred to.

From this condition of things several facts seem necessarily to follow : First. That the pole in question was erected by authority of an act of the legislature of the State, expressly conferring the right to erect such structure with the consent of the municipal authorities, and under such regulations as that authority might prescribe. Second. That the municipal authorities of the city have consented to and authorized the corporation to erect poles for the purposes mentioned, under and according to the direction of the commissioner of public works. Third. That the commissioner of public works has authorized the erection of the pole, and directed the location at which and the manner in which such erection might be made.

This combination of the several public authorities, by statute, ordinance and express official direction, must be held to have authorized and legalized the erection of the pole so far as in their power. The State having given its consent and vested the company with its authority over the subject, has made the act of erecting the pole a lawful one in so far as it is concerned. The city, acting under the authority conferred by the statute, has granted its consent, and through one of its public officers having the subject matter in charge, has authorized and directed the erection. Whatever control the public authorities respectively possessed over the streets, has been so exercised by the several steps taken by them that it is difficult to see on what ground the pole can be claimed to be a public nuisance because not erected by authority of law.

But it is claimed on the part of the relator that all those several steps are unconstitutional and void, because the right to erect the pole has been conferred by law and by municipal authority without provision for his compensation for the taking of part of his private

property. And upon this claim the question arises whether or not, even assuming the claim to be well founded, he can proceed by *mandamus* to compel the public authorities to retrace their action and take down the pole as a public or private nuisance.

We think no authority can be found to justify his proceeding by *mandamus* under such a state of facts.

The case relied upon as sanctioning the proceeding in such case by *mandamus*, to wit, *People ex rel. O'Reilly* v. *Mayor* (59 How. 277), was one where the municipal authorities had authorized a temporary obstruction of the streets on certain prescribed days for market purposes. The board of aldermen by resolution declared that licensed vendors should be permitted to occupy Forty-second street west of Eighth avenue and within 325 feet of the avenue on Saturday nights from six to twelve o'clock, but not so as to interfere with public travel on the streets. Under this ordinance about fifty market wagons, with the horses, merchandise and assistants, for the purpose of selling their property, occupied a portion of the street mentioned in such a way as to prevent its free use and enjoyment by persons having occasion to pass along it, and to interfere with the enjoyment of the relator's property so that he was unable to approach or leave it with his own vehicle, and was prevented by the noise and disturbance in the street from properly practicing as a physician. The ordinance under which this occupation was authorized was in express violation of a public statute which declared that the common council should not have the power to authorize the placing or continuing of any obstruction on any street or sidewalk except the temporary occupation thereof in the erection or repair of a building on the lot opposite the same. It was held that this provision of the statute restrained and limited the power of the common council, and that the ordinance which permitted the street to be occupied and obstructed as above stated was clearly unlawful and void.

This point was also decided by Mr. Justice VAN VORST in *Ely* v. *Campbell* (59 How., 333), in which it was held that the obstruction of streets or sidewalks without the sanction of the legislature is a nuisance, and that the municipal corporation could not give valid permission to any one to occupy and continue erections or other obstructions without express power conferred by statute.

But in the case now before us express power, as we have already seen, had been conferred by statute. The legislature had authorized the erection of the poles with the consent of the municipal authorities. The municipal authorities had given that consent, and through the department of public works had authorized and sanctioned the erection of the pole in question. The cases cited are no authority therefore for a proceeding by. *mandamus* by a citizen who alleges an injury by the erection of the pole, to compel the officers of the city to proceed to its removal. His remedy is a personal one and must be pursued in an altogether different manner.

The exercise of municipal authority over streets, where such authority is expressly conferred by an act of the legislature, is lawful, and where it has been exercised public officers will not be compelled by *mandamus* to undo what they have done because it is claimed that a private injury must result therefrom.

It is not necessary that we should pass, therefore, upon the principal question involved in this case which has been so elaborately argued, because it is manifest, under the circumstances, the relator has mistaken his remedy, if any he have. The question of his private rights cannot be determined in this proceeding, inasmuch as the writ of *mandamus* was not intended to compel such officers to undo acts authorized by law because some private injury might result therefrom, for which the party injured can pursue a legal remedy.

The court below was correct in denying the motion for the writ, and its order must therefore be affirmed, with ten dollars costs and disbursements, but without prejudice to any other remedy of the relator.

Brady and Daniels, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.